**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ROSS FONTANA,

              Plaintiff,

    v.

CSX CORPORATION, CSX
TRANSPORTATION, INC. and ANITA
ORONZIO and GABRIEL ORONZIO, III, as
Personal Representatives of THE ESTATE OF
LUIGI ORONZIO,

              Defendants.

Case No. 1:24-cv-00563-MN

(Removed from Del. Ch.
C.A. No. K24C-04-018-JJC)

---

### DEFENDANTS CSX CORPORATION AND CSX TRANSPORTATION, INC.'S OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS AND STRIKE

Dated: May 20, 2024

Mackenzie M. Wrobel (#6008)
Brandon Harper (#6418)
**DUANE MORRIS LLP**
1201 N. Market Street, Suite 501
Wilmington, DE 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
mmwrobel@duanemorris.com
bharper@duanemorris.com

*Counsel for Defendants CSX Corporation and
CSX Transportation, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ....................................................................2

SUMMARY OF ARGUMENT ............................................................................................2

STATEMENT OF FACTS ...................................................................................................3

ARGUMENT .......................................................................................................................4

I.    This Court Lacks Personal Jurisdiction Over CSX Corp....................................................4

    A.    This Court Lacks general jurisdiction Over CSX Corp. .......................................... 5

    B.    This Court Lacks Specific Jurisdiction Over CSX Corp. ....................................... 6

    C.    Exercising personal jurisdiction over CSX Corp. does not comport with Due Process protections........................................................................................... 8

II.    The ICCTA preempts Plaintiff's Claims for Negligent Design, Construction, and Maintenance of the Crossing Because They Impact and Discriminate Against Rail Transportation .....................................................................................................................9

    A.    Legal Standard for Federal Preemption ................................................................. 9

    B.    The ICCTA and Its Preemption of State Regulations............................................ 10

    C.    ICCTA Preemption Applies Because Plaintiff's Claims Are Directed to the Design, Construction, And Maintenance of a Railroad Crossing, and Thus Directly Impact & Discriminate Against Rail Transportation..................... 11

III.    The Court Should Dismiss Plaintiff's Allegations Directed to the Failure to Erect Barriers, Unnamed Violations of State and Federal law, Unidentified Claims That May Be Revealed In Discovery, Wanton and Willful Conduct, And Punitive and Exemplary Damages .............................................................................................................13

    A.    Rule 12(b)(6) Legal Standard ................................................................................ 13

    B.    A Railroad Has No Duty to Erect Barriers Under The Law ................................... 14

    C.    Plaintiff's Allegations of Unnamed Statutory Violations and Unidentified Claims That May Be Revealed Through Discovery Do Not Meet the Standard for Notice Pleading ................................................................................. 15

  D.  Plaintiff Does Not Allege Facts Sufficient to Support an Inference of
     Wanton or Willful Conduct and For Punitive and Exemplary Damages.............. 16

IV. The Court Should Strike Allegations Concerning Unrelated Prior Accidents. .................17

CONCLUSION...........................................................................................................................18

# TABLE OF AUTHORITIES

**Federal Cases**

*Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102 (1987) ..............................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 13-14, 16

*Baldonado v. Avrinmeritor, Inc.*, 2014 WL 2116112 (D. Del. May 20, 2014) ............................17

*Ball v. Takeda Pharm. Am., Inc.*, 963 F. Supp. 2d 497 (E.D. Va. 2013) ......................................15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................13, 16

*Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.,* 295 F. Supp. 2d 400 (D. Del. 2002) .................................................................................................................4

*Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir. 2002) ..................................................................9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ................................................................................................................................6, 8

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) ....................................................14

*Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311 (1981) ..............................9

*Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504 (1992) ..................................................................9

*City of Auburn v. United States*, 154 F.3d 1025 (9th Cir. 1998) ............................................ 9-10

*City of Norton v. Lowden*, 84 F.2d 663 (10th Cir. 1936) ............................................................13

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) ....................................7, 13, 14, 16

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ........................................................................ 5-7

*Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir. 1996) ........................................................5

*Deford v. Soo Line R.R. Co.*, 867 F.2d 1080 (8th Cir. 1989)..........................................................9

*Diehl v. CSX Transp., Inc.*, 349 F.Supp.3d 487 (W.D. Pa. 2018).................................................11

*Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416 (D.N.J. 2009) ............................18

*Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011) ..................................................10, 12

*Friberg v. K.C. S. Ry.*, 267 F.3d 439 (5th Cir. 2001)..................................................................10

*Good-year Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ....................................5

iii

*Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553 (3d Cir. 1994) ...................................6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ...........................5-6, 8

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985) ...................................9

*Houston E & W Tex. Ry. Co. v. United States*, 234 U.S. 342 (1914) ............................................9

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...............................................................5-6, 8

*Jacobs v. Halper*, 116 F. Supp. 3d 469 (E.D. Pa. 2015) ............................................................7

*J.K. ex rel. Kpakah v. CSX Transp.*, 2014 WL 4632356 (E.D. Pa. Sept. 16, 2014) ...................15

*Karpov v. Karpov*, 307 F.R.D. 345 (D. Del. 2015) .............................................................. 17-18

*In re Katrina Canal Breaches Consol. Litig.*, 2009 WL 224072 (E.D. La. Jan. 26, 2009), ...............................................................................................................................12

*King v. Nat'l R.R. Passenger Corp.*, 2024 WL 665335 (E.D. Pa. Feb. 16, 2024) ........................14

*La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355 (1986) ...............................................................9

*Laurie v. Nat'l Passenger R.R. Corp.*, 105 Fed. Appx. 387 (3d Cir. 2004) ................................14

*Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007) .......................................................................6

*Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836 (E.D. Ky. 2004) ........................................12

*Mest v. Cabot Corp.*, 449 F.3d 502 (3d Cir. 2006) ....................................................................15

*N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238 (3d Cir. 2007) ........................ 10-11

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007) ..............................................6

*Pere Marquette Hotel Partners, v. CSXT*, 2010 WL 925297 (E.D. La. Mar. 10, 2010) ..................................................................................................................................12

*Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Execs. Ass'n*, 491 U.S. 490 (1989) ......................9

*River Rd. Dev. Corp. v. Carlson Corp.–Northeast*, 1990 WL 69085 (E.D.Pa. May 23, 1990) ....................................................................................................................18

*Thomas-Fish v. Avborne Accessory Grp., Inc.*, 2019 WL 410433 (D. Del. Feb. 1, 2019) ................................................................................................................... 16-17

*Turner v. Prince George's Cnty. Pub. Schs.*, 694 F. App'x 64 (3d Cir. 2017) ...........................5

*United States v. Educ. Mgmt. Corp.*, 871 F.Supp.2d 433 (W.D.Pa.2012) .................................18

*Waneck v. CSX Corp.*, 2018 WL 1546373 (S.D. Miss. Mar. 29, 2018) ...............................11, 12

*Williams v. Chase Home Fin., LLC*, 2013 WL 3282878 (E.D. Mo. June 27, 2013). ...................15

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ................................................8

**State Cases**

*Chamberlain v. Pyle*, 2023 WL 1771013 (Del. Super. Ct. Feb. 6, 2023)....................................16

*Dugan v. Pennsylvania R. Co.*, 127 A.2d 343 (Pa. 1956) ...........................................................15

*LaNuova D & B, S.P.A. v. Bowe Co., Inc.*, 513 A.2d 764 (Del. 1986)...........................................5

*Matthew v. Fläkt Woods Grp. SA*, 56 A.3d 1023 (Del. 2012) ........................................................6

*Scarborough v. Lewis,* 523 Pa. 30, 565 A.2d 122 (Pa. 1989) .....................................................14

*Seattle v. Burlington N. RR. Co.*, 41 P.3d 1169 (Wash. 2002) ....................................................12

*State v. BNSF Railway Corp.*, 432 P.3d 77 (Kan. Ct. App. 2018)................................................12

*Villani v. Wilmington Hous. Auth.*, 106 A.2d 211 (Del. Super. Ct. 1954)....................................14

**Federal Statutes**

49 U.S.C. § 10102.................................................................................................................10

49 U.S.C. § 10501.................................................................................................................10

**State Statutes**

10 *Del. C.* §3104(c)...........................................................................................................4, 6

**Rules**

Fed. R. Civ. P. 12(b)(2).......................................................................................................4-5

Fed. R. Civ. P. 12(f)...............................................................................................................17

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2..........................................................................................................9

## INTRODUCTION

This case involves a train accident caused by the negligent operation of a motor vehicle by a driver who was under the influence of alcohol. *See* Complaint ("Compl.), at ¶¶ 11-13, attached hereto as Exhibit A. The driver drove the wrong way down New London Road and then stranded his car within the railroad crossing between New London Rd. and W. Main St. Plaintiff, a passenger in the car, was injured when the car was struck by a train operated by CSX Transportation, Inc. ("CSXT"). *Id.* at ¶ 18. The driver, Luigi Oronzio died five days later as the result of the injuries he suffered in the collision. *Id.*¶ 17.

In addition to suing the estate of Mr. Oronzio, Plaintiff sued CSXT and its parent company CSX Corporation ("CSX Corp."), alleging the same claims against both. The claims span from allegedly allowing the train to exceed the speed limit set by federal regulation (*Id.* at ¶ 27(l)) to allegedly failing to design, construct, and maintain the crossing in a manner that is reasonably safe (*Id.* at ¶ 27(a)-(b), (e), (g)-(k)), and providing allegedly insufficient warnings (*Id.* at ¶ 27(c)-(d), (n)). Throughout his Complaint, Plaintiff references several immaterial and impertinent past accidents, unrelated to the one at issue, intended only to cause prejudice, which the CSX Defendants move to strike. Additionally, while pleading his claims as negligence, Plaintiff contends that CSXT and CSX Corp. acted wantonly, willfully, and seeks punitive and exemplary damages against them.

CSXT and CSX Corp. did nothing wrong and expect to prevail on all of Plaintiff's claims. At this stage of the proceedings, they move to dismiss and strike certain claims and allegations from the Complaint on the following grounds: (1) lack of personal jurisdiction over CSX Corp., (2) federal preemption of plaintiff's claims directed to the design, construction, and maintenance of the crossing, (3) failure to state a claim for (a) an alleged failure to erect barriers

at the crossing, (b) violations of unidentified laws, (c) unidentified claims Plaintiff alleges may be revealed through discovery, and (d) wanton and willful conduct, and punitive and exemplary damages, and (4) to strike allegations in the Complaint regarding prior unrelated accidents.

## NATURE AND STAGE OF PROCEEDINGS

The instant action was filed on April 18, 2024 in the Delaware Superior Court for Kent County. On May 8, 2024, the CSX Defendants timely filed a Notice of Removal. D.I. 1. The CSX Defendants now move to dismiss on the grounds set forth above and as follow.

## SUMMARY OF ARGUMENT

CSXT and CSX Corp. move to dismiss and strike on each of the following grounds:

**(1) Lack of personal jurisdiction over Defendant CSX Corp.** CSX Corp. is incorporated under the laws of Virginia and has its principal place of business in Florida. Thus, it is not at home in Delaware, and there is no general jurisdiction over it. Additionally, CSX Corp. is not subject to the Court's specific jurisdiction because it has no connection to the claims in dispute. CSX Corp. is a holding company that conducts no railroad operations. It did not operate the train involved in the subject collision and did not own the crossing where it occurred.

**(2) Plaintiff's claims related to the design, construction, and maintenance of the crossing are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101, *et seq.*** Congress enacted ICCTA to establish a uniform federal scheme of regulations governing interstate rail transportation. Contrary to that uniformity of purpose is any attempt by the 50 states to impose their own regulations – whether through legislation or tort claims – on rail transportation. If such regulation was permissible, railroads would have to, instead, comply with a patchwork of regulations. To prevent this, the courts have held that any such attempt to regulate the railroads, if they discriminate against the

railroad, are preempted by ICCTA. That is what Plaintiff seeks to do here. By seeking to proceed on a theory that CSXT negligently designed, constructed, and maintained its crossing, Plaintiff seeks to usurp the exclusive jurisdiction the ICCTA grants to the Surface Transportation Board (the "STB") to regulate such matters. For that reason, his claims directed to the design, construction, and maintenance of the crossing are preempted.

**(3) Plaintiff's allegations directed to the alleged failure to erect barriers fails to state a claim upon which relief may be granted.** It is blackletter law that railroads have no duty to fence their premises. If the law were otherwise, it would place an impossible burden on the railroad industry, which operates over 160,000 miles of track in the United States.

**(4) Plaintiffs allegations of unnamed violations of state and federal law, claims that may be further revealed through discovery, wanton and willful conduct, and for punitive and exemplary damages fail to state a claim upon which relief may be granted.** These vague and unidentified allegations are conclusory, not factual, and thus fail the standard for notice pleading.

**(5) Allegations in the Complaint concerning unrelated prior accidents should be stricken as impertinent.** Plaintiff's repeated references to unrelated accidents are immaterial, impertinent, and intended to only cause prejudice, and should therefore be stricken.

## STATEMENT OF FACTS

On the evening of April 22, 2022, Plaintiff, Mr. Oronzio, and a number of friends were "socializing at a north campus apartment near the University of Delaware."[1] Ex. A, Compl., at ¶ 11. Mr. Oronzio consumed alcohol at this gathering, and Plaintiff alleges he was intoxicated. *Id.*

---

[1] In reality, the events giving rise to this claim continued into the early morning of April 23, 2022.

at ¶¶ 12, 35(d).  The friends left the north campus apartment and got into a car driven by Mr.

Oronzio.  *Id.* at ¶¶ 11-13.  Due to his intoxication, Mr. Oronzio "drove the wrong way down New

London Rd. towards W. Main Street."  *Id.* at ¶ 13.  When he "attempted to course correct[,]"the

"vehicle became stuck and stranded in the railroad crossing[.]"  *Id.* at ¶¶ 12–13.  Moments later,

as Mr. Oronzio attempted to assist Plaintiff from the stranded vehicle, a train collided with the

vehicle.  *Id.* at ¶ 16.  Plaintiff alleges that he sustained injuries as a result of the collision and, on

April 27, 2022, Mr. Oronzio died as a result of his injuries sustained in the collision.  *Id.* at ¶ 17.

Plaintiff asserts 15 different theories of liability against CSXT and CSX Corp.  As

discussed above, they run the gamut from allowing the train to exceed the speed limit set by

federal regulation (*Id.* at ¶ 27(l)) to allegedly failing to design, construct, and maintain the

crossing in a manner that is reasonably safe (*Id.* at ¶ 27(a)-(b), (e)-(k)), and providing allegedly

insufficient warnings (*Id.* at ¶ 27(c)-(d), (n)).  He also seeks to proceed "[i]n any manner as may

be further revealed through discovery."  *Id*. ¶ 27(o).  As follows, Plaintiff's claims fail for lack of

personal jurisdiction over CSX Corp., others are preempted by federal law, and fail to state a

cause of action for which relief may be granted.

## ARGUMENT

### I.      This Court Lacks Personal Jurisdiction Over CSX Corp.

As a threshold matter, Count I of the Complaint should be dismissed as to CSX Corp,

pursuant to Fed. R. Civ. P. 12(b)(2).  A Delaware federal court may exercise jurisdiction over

CSX Corp. only if authorized both by the United States Constitution and Delaware law.  *Bell*

*Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.,* 295 F. Supp. 2d 400, 403 (D. Del.

2002).  Delaware courts follow a two-step process to determine if personal jurisdiction over a

non-resident defendant exists: (1) whether jurisdiction is proper under either the specific or

general jurisdiction requirements of 10 *Del. C.* §3104(c), and if so; (2) whether subjecting the

non-resident defendant to jurisdiction in Delaware violates the defendant's rights under the due process clause of the Fourteenth Amendment. *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014); *LaNuova D & B, S.P.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (Del. 1986) (plaintiffs' claims must have a nexus to the designated conduct).

Rule 12(b)(2) does not limit the scope of the court's review to the face of the pleadings, and consideration of affidavits submitted by the parties is appropriate. *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). Plaintiff has the burden of establishing personal jurisdiction over CSX Corp. *Turner v. Prince George's Cnty. Pub. Schs.*, 694 F. App'x 64, 66 (3d Cir. 2017). Plaintiff's jurisdictional allegations against CSX Corp. fail to satisfy this burden.

### A.      This Court Lacks general jurisdiction Over CSX Corp.

The jurisdictional allegations in the Complaint do not satisfy the standard for general jurisdiction. A corporate defendant is constitutionally subject to general jurisdiction only where its operations are "so 'continuous and systematic' as to render [the corporation] essentially *at home* in the forum State." *Good-year Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *I nt'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945) (emphasis added). Any lesser degree of contact will not do. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) (regularly purchasing equipment in a state and sending employees there did not give rise to general jurisdiction); *Good-year*, 564 U.S. at 919-20 (no general jurisdiction over foreign subsidiaries of corporate parent that was amenable to suit, even where the subsidiaries' products were sold in the state).

CSX Corp. is not at home in Delaware. CSX Corp. is a Virginia corporation, not a Delaware corporation. Ex. A, Compl., ¶ 2; Ex. B, Burns Decl., ¶ 4. Its principal place of business is in Florida. Ex. A, Compl., ¶ 2; Ex. B, Burns Decl., ¶ 7. Thus, this Court does not possess general jurisdiction over it.

DM1\15341160.4

**B.      This Court Lacks Specific Jurisdiction Over CSX Corp.**

Plaintiff has failed to establish specific personal jurisdiction over CSX Corp., which has no connection to this lawsuit whatsoever.  Specific jurisdiction requires that "the in-state activities of the corporate defendant had not only been continuous and systematic, but also gave rise to the liabilities sued on."  *Daimler*, 571 U.S. at 127; *see also Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007) (citing *Helicopteros,* 466 U.S. at 414–15 & n.8 ("Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state.")).  Specific jurisdiction under the Due Process Clause requires satisfaction of a three-part inquiry.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).  First, the defendant must have "purposefully directed [its] activities" at the forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quotation marks omitted).  Second, the litigation must "arise out of or relate to" at least one of those activities.  *Helicopteros*, 466 U.S. at 414; *Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994).  Third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"  *Burger King*, 471 U.S. at 476 (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. at 320).

Specific jurisdiction is not met under 10 *Del. C.* §3104(c)(1) because the CSX Corp. does not transact "any business or perform[] any character of work or service in [Delaware]," (10 *Del. C.* §3104(c)(1)) and CSX Corp. does not have sufficient minimum contacts with Delaware.  *Matthew v. Fläkt Woods Grp. SA*, 56 A.3d 1023, 1027 (Del. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. at 316).

Pertinent to this inquiry, Plaintiff fails to plead any factual allegations that might support the plausible conclusion that CSX Corp. individually owned or otherwise had a possessory interest in either the train or the property involved in the accident sued upon, such that the claims

against it could be said to arise from or relate to CSX Corp.'s specific contacts with this forum (of which there are none). *Daimler*, 571 U.S. at 128. Instead, Plaintiff asserts claims collectively against two different CSX entities without distinguishing one from the other. In other words, the Complaint treats CSXT and CSX Corp. both as the owner of the subject train and property at issue in this case. The Court need not treat these vague and conclusory allegations as true. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016). Indeed, they are false. *See* Declaration ("Decl.") of Michael S. Burns, attached hereto as Exhibit B.

With this motion, CSX Corp. presents evidence in the form of a sworn declaration (*See Jacobs v. Halper*, 116 F. Supp. 3d 469, 475 (E.D. Pa. 2015) (noting that defendant challenging personal jurisdiction may properly submit evidence at Rule 12 stage)) showing that it does not operate as a railroad, nor has it ever operated as a railroad. Ex. B, Burns Decl., ¶¶ 8-11. Instead, it was authorized by the Interstate Commerce Commission, and later the Surface Transportation Board, to own but not operate common carrier railroads. Ex. B, Burns Decl., ¶ 8. CSX Corp. has never itself been a common carrier railroad; CSX Corp. has never constructed, maintained, or operated any railroad rolling equipment, any railroad track, roadbed, or any other railroad equipment, including in the State of Delaware; CSX Corp. does not own, use, possess or maintain any real property situated in the State of Delaware; CSX Corp. does not maintain an office in the State of Delaware; CSX Corp. does not have a mailing address, post office box or telephone number in the State of Delaware; CSX Corp. is not licensed to do business in the State of Delaware; and CSX Corp. does not have any employees in the State of Delaware. Ex. B, Burns Decl., ¶¶ 8, 11-16. CSX Corp. is a holding company and, has no connection to Delaware. It is therefore not only implausible, but entirely impossible that CSX Corp. could or did perform any of the acts that Plaintiff alleges. Accordingly, Plaintiff's claims against CSX Corp. do not

DM1\15341160.4

arise out of or relate to any in state activities of CSX Corp. (of which there are none), and the

Court lacks specific personal jurisdiction over CSX Corp. *Helicopteros*, 466 U.S. at 414.

### C. Exercising personal jurisdiction over CSX Corp. does not comport with Due Process protections.

Because the Court does not possess general or specific jurisdiction over CSX Corp., the

Court need not reach the second step of the jurisdictional analysis: whether exercising personal

jurisdiction over CSX Corp. comports with Due Process protections. However, for the

avoidance of all doubt, the second step also weighs heavily in favor of dismissal.

The due process analysis requires two main components: (1) minimum contacts, and; (2)

reasonableness. *Int'l Shoe*, 326 U.S. at 316. As stated above, CSX Corp. has no contacts with

Delaware, satisfying the first component. Even if CSX Corp. were found to have significant

contacts with Delaware, the exercise of jurisdiction over CSX Corp. would still be unreasonable,

and would violate due process.

Reasonableness requires the evaluation of: (1) burden on defendant; (2) interest of the

forum state; (3) Plaintiff's interest in obtaining convenient and effective relief; (4) interstate

judicial system's interest in obtaining the most efficient resolution of controversies; and (5) shared

interest of all states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co.

v. Superior Court of California*, 480 U.S. 102, 113 (1987); *Burger King*, 471 U.S. at 476; *World-

Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Applied to CSX Corp., a Virginia

corporation headquartered in Florida, with no connection to Delaware, the reasonableness analysis

tips substantially against the exercise of jurisdiction over CSX Corp. in Delaware.

DM1\15341160.4

## II. The ICCTA preempts Plaintiff's Claims for Negligent Design, Construction, and Maintenance of the Crossing Because They Impact and Discriminate Against Rail Transportation[2]

### A. Legal Standard for Federal Preemption

Federal preemption is rooted in the Supremacy Clause, which authorizes Congress to preempt state law in the legitimate exercise of its legislative authority. U.S. Const. art. VI, cl. 2; *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 368 (1986). "Because federal law is the supreme law of the land, it preempts state laws that 'interfere with, or are contrary to, federal law.'" *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002) (quoting *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985)).

Railroads are subject to the regulatory authority of Congress under the Commerce Clause. *See, e.g.*, *Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Execs. Ass'n*, 491 U.S. 490, 510 (1989); *Houston E & W Tex. Ry. Co. v. United States*, 234 U.S. 342, 350-52 (1914). The Supreme Court "repeatedly has recognized the preclusive effect of federal legislation" in regulation railroads. *City of Auburn v. United States*, 154 F.3d 1025, 1029 (9th Cir. 1998). Common law tort claims are a form of state regulation to which federal preemption applies. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521-22 (1992). And, the federal authority over the railroad industry in ICCTA has been recognized as "among the most pervasive and comprehensive of federal regulatory schemes." *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co*., 450 U.S. 311, 318 (1981) *accord Deford v. Soo Line R.R. Co.*, 867 F.2d 1080, 1088-91 (8th Cir. 1989) (Interstate Commerce Act so pervasively occupies the field of railroad governance that it completely preempts state law claims).

---

[2] The analysis that follows in this Section and the next (Section II) apply equally to CSXT and CSX Corp. However, the Court need not reach them as to CSX Corp. if it grants CSX Corp.'s motion to dismiss for lack of personal jurisdiction.

DM1\15341160.4

## B.      The ICCTA and Its Preemption of State Regulations

Congress enacted the ICCTA and created the STB to regulate rail transportation in the United States, and "to implement a federal scheme of minimal regulation for this intrinsically interstate form of transportation." *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 804 (5th Cir. 2011) (internal citation and quotations omitted). ICCTA granted the STB exclusive jurisdiction over "transportation by rail carriers" and over the "construction" or "operation" of rail tracks or "facilities." 49 U.S.C. § 10501(b). The "remedies provided" by ICCTA "with respect to regulation of rail transportation are exclusive and preempt the remedies provided under … State law." *Id.* § 10501(b). As courts have noted, it is "difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *City of Auburn*, 154 F.3d at 1030 (internal quotations omitted); *see also Friberg v. K.C. S. Ry.*, 267 F.3d 439, 443 (5th Cir. 2001).

Consistent with the STB's exclusive jurisdiction, ICCTA broadly defines "transportation" to include any "property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail" and any "services related to that movement." *See* 49 U.S.C. § 10102(9)(A)&(B). ICCTA also defines a "railroad" to include: (1) the "road used by a rail carrier;" and (2) all "track . . . and ***ground, used or necessary for transportation***." *Id.* § 10102(6)(B)&(C) (emphasis added).

Courts have likewise interpreted "regulation" broadly to include any claims under state law that "may reasonably be said to have the effect of managing or governing rail transportation." *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007). The Third Circuit applies a two prong test to determine whether a state law is preempted because it "manages or governs" rail transportation: (1) the law must discriminate against rail transportation; or (2) the law must unreasonably burden rail transportation. *Id.* at 254, 257. A

state tort claim is preempted if it meets either prong of this test. *Diehl v. CSX Transp., Inc.*, 349 F.Supp.3d 487, 499 (W.D. Pa. 2018).

**C.    ICCTA Preemption Applies Because Plaintiff's Claims Are Directed to the Design, Construction, And Maintenance of a Railroad Crossing, and Thus Directly Impact & Discriminate Against Rail Transportation**

Plaintiff's claims are directed explicitly at railroad crossings, and thus discriminate against rail transportation. A regulation discriminates against rail transportation when it "target[s] the railroad industry" specifically by imposing unique costs, exceeding those merely "incidental" which "all firms build into the cost of doing business." *N.Y. Susquehanna*, 500 F.3d at 254.

Here, Plaintiff alleges that his claims arise out of the following alleged failures:

- "[T]o design, construct and maintain a safe crossing at the accident location[,]"
- To adequately maintain the "crossing, including but not limited to the railroad tracks, roadway surface, sight distances, crossing devices, and the surrounding area[,]"
- "[T]o eliminate . . . the existence of a dangerous condition to exist and subjecting the area to an unreasonable risk of injury to the public[,]"
- "[T]o develop and/or implement a reasonable policy for identifying its particularly dangerous or ultrahazardous railroad crossings[,]"
- "[T]o eliminate or reduce the dangers presented to motorists at [the] Crossing[,]"
- "[T]o eliminate track impediments causing vehicles to become stuck on the railroad tracks[,]"
- "[T]o properly grade [the] Crossing causing vehicles to get stuck[,]" and
- "To exercise reasonable care and skill by creating, failing to eliminate, or permitting the existence of obstructions in the sight lines around [the] Crossing thereby allowing a dangerous condition to exist and causing an unreasonable risk of injury to the public[,]" as well as "[c]ausing a collision with the Oronzio vehicle[.]"

Ex. A, Compl., ¶ 27(a)-(b), (e), (g)-(k). These claims, directed to the design, construction, and maintenance of the subject crossing, may be properly disposed of on a motion to dismiss. *See Waneck v. CSX Corp.*, 2018 WL 1546373, at *6 (S.D. Miss. Mar. 29, 2018) (granting motion to dismiss state law injury claims to extent based on CSXT's design, construction, and maintenance

of crossing); *Pere Marquette Hotel Partners, v. CSXT*, 2010 WL 925297, at *1, 6–7 (E.D. La.

Mar. 10, 2010) (granting motion to dismiss based on ICCTA preemption because plaintiff's

claims were directed at the sand and gravel beneath CSXT's tracks).

In *Waneck v. CSX Corp.*, the Southern District of Mississippi held that "when a plaintiff's

tort claim directly attempts to manage or govern a railroad's decisions in the economic realm,

that claim 'is either wholly federal or nothing at all.'" *Waneck*, 2018 WL 1546373, at *5

(quoting *Elam*, 635 F.3d at 807). Thus, claims "arising out of the 'design and construction'" of a

crossing are "completely preempted by the ICCTA." *Id.* Similarly, in *In re Katrina Canal*

*Breaches Consol. Litig.*, 2009 WL 224072, at *6 (E.D. La. Jan. 26, 2009), the Eastern District of

Louisiana held that "[t]he design and construction of a railroad crossing and the roadbed for

tracks is necessarily inextricably intertwined with the design and construction of the railroad

tracks located at the crossing. Additionally, the design and construction of the railroad crossing,

tracks, and roadbed relates directly to CSXT's rail activity." *Id.* at 281. Thus, the court held,

because "ICCTA makes it clear that the Surface Transportation Board has exclusive jurisdiction

over the 'construction' of railroad tracks. . . the plaintiffs' claim that CSXT negligently designed

and constructed the railroad crossing, tracks, and roadbed is preempted." *Id.* at 281-282; *see also*

*Pere Marquette Hotel Partners v. U.S.*, 2010 WL 925297, at *1, 6–7 (E.D. La. Mar. 10, 2010)

(claims concerning construction of roadbed and other portions of track preempted by ICCTA);

*Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 843 (E.D. Ky. 2004) (holding, on motion for

summary judgment, that ICCTA preempts negligence claims premised on "construction and/or

maintenance of the tracks and crossings"); *Seattle v. Burlington N. RR. Co.*, 41 P.3d 1169 (Wash.

2002) (finding ICCTA preemption of regulations regarding signaling at railroad crossings); *State*

*v. BNSF Railway Corp.*, 432 P.3d 77, 86 (Kan. Ct. App. 2018) (citing *City of Norton v. Lowden*,

84 F.2d 663 (10th Cir. 1936) (noting that state regulations of rail crossing which result in loss of time, disruption of scheduled, and delays "have a direct impact on railroad operations.").

Preemption applied in each of these cases because the state law tort claims concerning the design and construction of railroad crossings sought to impermissibly dictate, at the state level, how a railroad must build its railroad crossings and tracks. Plaintiff's claims in this case are no different, and thus Defendants' Motion to Dismiss should be granted.

## III. The Court Should Dismiss Plaintiff's Allegations Directed to the Failure to Erect Barriers, Unnamed Violations of State and Federal law, Unidentified Claims That May Be Revealed In Discovery, Wanton and Willful Conduct, And Punitive Damages

### A. Rule 12(b)(6) Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.") (citation omitted).

Further, "[a]lthough the plausibility standard 'does not impose a probability requirement,' *Twombly*, 550 U.S. at 556, it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully,' *Iqbal*, 556 U.S. at 678. A complaint that pleads facts 'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief.' *Id. . . .* The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' *Id.* at 679." *Connelly*, 809 F.3d at 786-87.

DM1\15341160.4

Based on this standard, the Third Circuit has held that "a court reviewing the sufficiency of a complaint must take three steps. First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.' *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' *Id*. at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ('Mere restatements of the elements of a claim are not entitled to the assumption of truth.' (citation and editorial marks omitted)). "Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679) (brackets in original).

## B. A Railroad Has No Duty to Erect Barriers Under The Law

The law does not impose a duty on railroads to erect barriers or to fence out their property. Thus, Plaintiff's claims premised on the alleged failure to do so (Ex. A, Compl., ¶ 27(f)) fails to state a claim and should be dismissed. Indeed, under Delaware law, there is "no common law duty requiring [any] landowner to enclose his land with fences." *Villani v. Wilmington Hous. Auth.*, 106 A.2d 211, 213 (Del. Super. Ct. 1954). This applies equally to railroads. Our neighboring state of Pennsylvania has repeatedly held that to be the case. *See, e.g., King v. Nat'l R.R. Passenger Corp.*, 2024 WL 665335, at *2 (E.D. Pa. Feb. 16, 2024) (under Pennsylvania law, Amtrak had no duty to fix hole in fence that that plaintiff walked through before being struck and killed by a train); *Laurie v. Nat'l Passenger R.R. Corp.*, 105 Fed. Appx. 387, 391 (3d Cir. 2004) (holding no Amtrak had no duty to erect or maintain fences on its right-of-way); *Scarborough v. Lewis,* 523 Pa. 30, 565 A.2d 122, 126 (Pa. 1989) ("it long has been held that a railroad has no duty to erect fences on its right-of-way"). It is not difficult to understand why. "It is, of course, obvious that if there were imposed upon the defendant the requirement of

14

fencing the place where [an] accident occurred, it would likewise be subject to the duty of fencing the innumerable places along its many miles of tracks." *Dugan v. Pennsylvania R. Co.*, 127 A.2d 343, 348 (Pa. 1956). Hence the law does not impose a duty to fence.

## C. Plaintiff's Allegations of Unnamed Statutory Violations and Unidentified Claims That May Be Revealed Through Discovery Do Not Meet the Standard for Notice Pleading

Allegations of unnamed federal and state law violations, and unidentified and unalleged claims that may be revealed through discovery fail to provide defendants with fair notice of which laws defendants are alleged to have violated under Rule 8(a)(2). *See J.K. ex rel. Kpakah v. CSX Transp.*, 2014 WL 4632356, at *4 (E.D. Pa. Sept. 16, 2014). Courts have consistently held that when a plaintiff alleges negligence through violations of a statute, the plaintiff must identify the particular statute. *See, e.g., Mest v. Cabot Corp.*, 449 F.3d 502, 518 (3d Cir. 2006); *Ball v. Takeda Pharm. Am., Inc.*, 963 F. Supp. 2d 497, 506–07 (E.D. Va. 2013); *Williams v. Chase Home Fin., LLC*, 2013 WL 3282878, at *5 (E.D. Mo. June 27, 2013). Otherwise, when faced with "the vast number of potentially applicable laws, neither defendants nor the Court would know where to begin in evaluating plaintiffs' claims." *Kpakah*, 2014 WL 4632356, at *4.

Here, the claim that the CSXT and CSX Corp. breached their purported duties by violating "Federal Standards" and "the laws of the State of Delaware" should be dismissed. *See* Ex. A, Compl., 26. The Complaint does not identify a specific law or even hint at the broader statutory framework Plaintiff believes applies to the conduct. This type of barebones pleading is insufficient because it would require both the CSX Defendants and the Court to guess as to the applicable laws that Plaintiff claims the CSX Defendants violated. *Kpakah*, 2014 WL 4632356, at *4.

The same is true for Plaintiff's allegations directed to claims that may be revealed through discovery. Such an averment does not allege factual content, let alone allow the court to

draw the reasonable inference that CSXT and CSX Corp. are liable for the misconduct alleged, whatever it may be.  *Twombly*, 550 U.S. at 555.

### D.	Plaintiff Does Not Allege Facts Sufficient to Support an Inference of Wanton or Willful Conduct and For Punitive and Exemplary Damages.

Plaintiff's punitive and exemplary damages claim alleges no facts plausibly giving rise to the inference that the CSX Defendants' "conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of others[.]"  Ex. A, Compl., ¶ 32.  To the contrary, the only Count asserted against the CSX Defendants is for negligence, and "[p]unitive damages seek to punish . . . behavior and conduct that is considered egregious, reckless, reprehensible, or filled with malice."  *Chamberlain v. Pyle*, 2023 WL 1771013, at *3 (Del. Super. Ct. Feb. 6, 2023) (brackets omitted).

Here, Plaintiff's allegations fail to allege plausible conduct that might support a finding of willful or wanton conduct and punitive damages.  *See Iqbal*, 556 U.S. at 681.  The Court should ignore the allegations that the CSX Defendants' "conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of others" because they are nothing more than legal conclusions.  Ex. A, Compl., ¶ 32; *see also Connelly*, 809 F.3d at 790 (stating that legal conclusions "are not entitled to the presumption of truth").  The Complaint is bereft of any allegations of any intentional acts or knowledge of matters that the CSX Defendants recklessly disregarded.

This Court addressed similar allegations in *Thomas-Fish v. Avborne Accessory Grp., Inc.*, 2019 WL 410433 (D. Del. Feb. 1, 2019), *report and recommendation adopted*, 2019 WL 690339 (D. Del. Feb. 19, 2019), holding:

> Plaintiff has not pleaded any facts that suggest actual malice or willful or wanton conduct. The complaint is bare of factual allegations of any defendant's alleged act or omission, and such other conduct that would arguably be a predicate for survival of a claim for punitive damages. The complaint relies on general, conclusory allegations that refer to all defendants collectively, and does not allege any facts supporting any particular defendant's conduct. . . . Without any factual allegations, plaintiff "(1) cannot plausibly suggest that *Plaintiff*[ ] [is] entitled to punitive damages *as a result of* the alleged misconduct at issue, and (2) do not plausibly establish that *these particular Defendants* have engaged in that misconduct." Therefore, the court recommends granting defendants' motion to dismiss plaintiff's claim for punitive damages without prejudice.

*Id.* at *7 (quoting *Baldonado v. Avrinmeritor, Inc.*, 2014 WL 2116112, at *6 (D. Del. May 20, 2014)). The same is equally true here, Plaintiff not only relies on general and conclusory allegations, he refers to the CSX Defendants collectively and does not allege facts relating to the specific conduct of either (although only CSXT is a proper party to this action for the reasons set forth above). Thus, Plaintiff's claims for willful and wanton conduct, and punitive and exemplary damages should be dismissed.

## IV. The Court Should Strike Allegations Concerning Unrelated Prior Accidents.

Plaintiff spends a large portion of the Complaint discussing prior unrelated accidents that have no bearing on the events underlying the Complaint. Ex. A, Compl., ¶¶ 6-10, 28, 29. References to facts and events unrelated to the April 22, 2022 accident at issue here are immaterial and impertinent and should be stricken.

Pursuant to Fed. R. Civ. P. 12(f), this Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a Fed. R. Civ. P. 12(f) motion to strike is to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters." *Karpov v. Karpov*, 307 F.R.D. 345, 348 (D. Del. 2015) (quoting *United States v. Educ. Mgmt. Corp.,* 871 F.Supp.2d 433, 460 (W.D.Pa.2012))

DM1\15341160.4

(citation omitted).  When determining whether to strike for relevancy, the challenged allegations must be "so unrelated to the plaintiff's claims as to be unworthy of any consideration and that their presence in the pleadings will be prejudicial." *Karpov*, 307 F.R.D. at 348 (quoting *See River Rd. Dev. Corp. v. Carlson Corp.–Northeast,* 1990 WL 69085, at *7 (E.D.Pa. May 23, 1990)).  This Court may grant a motion to strike where the material bears "no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 425 (D.N.J. 2009), *as amended* (July 6, 2009).

The recitation of past events unrelated to that at issue here lacks any bearing on this case and serves only to create prejudice against the CSX Defendants.  Therefore, should any portion of the Complaint survive dismissal, the CSX Defendants request that any references to past events unrelated to the event here be stricken from the Complaint.

## CONCLUSION

The CSX Defendants respectfully request the Court grant their motion and dismiss Count I of the Complaint with prejudice.

Dated:  May 20, 2024

**DUANE MORRIS LLP**

*/s/ Brandon Harper*
Mackenzie M. Wrobel (#6008)
Brandon Harper (#6418)
1201 N. Market Street, Suite 501
Wilmington, DE  19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
mmwrobel@duanemorris.com
bharper@duanemorris.com

*Counsel for Defendants CSX Corporation and CSX Transportation, Inc.*

DM1\15341160.4